IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | Civil Action No. 6:07-0290-HFF-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| Denis K. Muhilly, ) | |
| a/k/a K. Muhilly, ) | |
| a/k/a Denis K. Muttilly, ) | |
| a/k/a Denis R. Muhilly, ) | |
| a/k/a Denny Millimy, ) | |
| a/k/a Denis A. Muhilly, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on the plaintiff's motion for summary judgment (doc. no. 16) and the defendant's motion to dismiss (doc. no. 21). The defendant is proceeding *pro se*. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The plaintiff filed its motion for summary judgment on June 28, 2007. By order filed July 10, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the defendant was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On August 8, 2007, the defendant filed a response to the motion and his own "petition for dismissal." The plaintiff filed a reply brief and opposition to the defendant's motion on August 17, 2007. The defendant filed a sur-reply on September 12, 2007.

**FACTS PRESENTED**

During the years 1980-1983, while attending United States International University ("the university"), defendant Denis Muhilly signed 14 National Direct Student Loan ("NDSL") promissory notes totaling $6,120.00. Three NDSL loans were disbursed to the defendant at a rate of 3% interest. The first of these loans was disbursed for $1,080.00 on August 13, 1980 (pl. m.s.j., ex. A). The second loan was disbursed for $1,230.00 on January 30, 1981 (*id.*, ex. B). The third loan was disbursed for $410.00 on April 10, 1981 (*id.*, ex. C). These three loans, at 3% interest, totaled $2,720.00. These loans were declared in default by the university on June 1, 1986. After the institution credited all cancellations due and payments received, the balance totaled $3,800.16, including $2,719.00 in principal, $897.16 in interest, and $184.00 in penalties. These loans were subsequently assigned to the United States Department of Education ("DOE") on February 13, 1997, under debt number N199709006552701. Since assignment of the loans, DOE credited $100.84 in payments from all sources, including any Treasury Department Offsets.

Seven of the NDSL loans were disbursed at a rate of 4% interest. The first two disbursements from this batch were each for $410.00, and both disbursed on September 15, 1981 (*id.*, ex. E, F). Three separate disbursements, each in the amount of $260.00, were made to the defendant on September 15, 1981, November 30, 1981, and April 9, 1982 (*id.*, ex. G, H, I). A sixth loan was disbursed for $300.00 on July 28, 1982, and a seventh loan, also for $300.00 was disbursed on September 10, 1982 (*id.*, ex. J, K). The total of these loans, all at 4% interest per annum, is $2,200.00. The loans were declared in default by the university on June 1, 1986. After applying all credits, the balance totaled $3,329.56, including $2,199.00 in principal, $967.56 interest, and $163.00 in penalties. These loans were assigned to DOE on May 15, 1997, under debt number

2

N199709012171901.  Since assignment of the loans, DOE has credited $89.57 in payments from all sources, including any Treasury Department Offsets.

Four NDSL loans were disbursed at a rate of 5% interest per annum.  All four of these loans were in $300 amounts, and were disbursed on January 7, 1983, March 8, 1983, June 23, 1983, and June 24, 1983 (*id.*, ex. M, N, O, P).  The total of these four loans at 5% interest was $1,200.00.  These loans were declared in default by the university on June 1, 1986.  After the university credited all cancellations due and payments received, the balance totaled $1,991.56, including $1,199.00 in principal, $659.56 interest, and $133 in penalties.  These loans were assigned to DOE on February 13, 1997, under debt number N199709006552801.  Since assignment of the loans, DOE credited $54.33 in payments from all sources, including any Treasury Department Offsets.

In addition to the 14 students loans described above, four Federal Family Education Loan Program ("FFELP") loans, totaling $19,728.00, were disbursed to the defendant at a rate of 7% interest per annum.  Three of these loans were in $5,000 amounts, and were disbursed on September 30, 1980, September 24, 1981, and October 4, 1982 (*id.*, ex. R, T, V).  A fourth loan was disbursed for $4,728.00 on August 12, 1983 (*id.*, ex. X).  These loan obligations were guaranteed by the California Student Aid Commission and then reinsured by DOE under loan guaranty programs authorized under Title IV-B of the Higher Education Act of 1965, as amended, 20 U.S.C. § 1071, *et seq*. 34 C.F.R. Part 682.  The lending institution, Mission Federal Credit Union, declared the loans in default on December 1, 1985.  An insurance claim for all four loans, totaling $20,938.71, was paid to Mission Federal Credit Union by the California Student Aid Commission. Pursuant to 34 C.F.R. § 682.410(b)(4), once the guarantor pays on a default claim, the entire amount paid becomes due the guarantor as principal.  While California Student Aid

Commission held the loans, a total of $899.10 was collected. The loans were then assigned to DOE on April 27, 1995, under debt numbers G199509006472401, G199509006472502, G199509006472603, and G199509006472704. Since assignment of the loan, DOE credited $1,009.89 in payments from all sources, including any Treasury Department Offsets.

The defendant has submitted evidence that on April 29, 1995, and May 30, 1995, the defendant was sent letters explaining DOE's willingness to negotiate payment arrangements (*id.*, ex. AA-BB). When the debtor did not accept the offers to resolve the loans, the cases were placed with private collection agencies. During the next 11 years, DOE placed the defendant's account with six private collection agencies. From November 8, 2000, to June 8, 2001, one of the agencies was successful in collecting a total of $1,254.63 via administrative wage garnishments (*id.*, ex. CC, DD). However, the collection agencies were unsuccessful in collecting the full amount due on the loans, and the matter was referred back to DOE for litigation.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the

disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff seeks payment from the defendant for the principal and interest on the foregoing loans. To succeed in action against a borrower on defaulted student loans, the government must show: (1) the borrower is the person issued note; (2) the

government owns note; and (3) the note is unpaid. *United States v. Durbin*, 64 F. Supp.2d 635, 636 (S.D. Tex. 1999). The defendant, who is an educator himself, acknowledges attending United States International University and receiving student loans. However, with regard to his responsibility to pay the debt, the defendant contends that he was recruited by the university and was told by the president of the university that he would receive a full scholarship. He states that when he arrived at the university, the president told him that a portion of his program would be covered by student loans for which the university would assume payment upon the defendant's graduation. The defendant contends that the president refused to speak to him about the loans after his graduation. He argues that he did not hear anything else about the loans and assumed "the university took care of this matter." The defendant claims he knew nothing of his default on the loans for 22 years. Lastly, the defendant argues that responsibility for the loans lies with the university, which he claims was the "initiator" of the loans.

As noted by the plaintiff, the defendant does not address the existence of the 18 promissory notes he signed and executed, in which he, and no other party, agreed to pay. While the defendant states he received no communication regarding these loans, the government has documented its numerous efforts to communicate with the defendant through the use of letters, collection agents, and administrative garnishment directly from the defendant's paychecks. The government's position is supported by a Declaration by Delfin M. Reyes, a Loan Analyst for the DOE, which evidences the numerous promissory notes at issue, the defendant's default, the written demand made by the lenders for payment of the unpaid balance, and the defendant's failure to pay the balance due. Further, the United States has come forward with evidence of the amount of the debt owed (pl. m.s.j., ex. 1, A-FF).

As argued by the plaintiff, the defendant's claims that he was misled are irrelevant to this matter, because the student loan contract, held by the DOE, and any enrollment contract with the school are structured "as a matter of federal law . . . as two separate transactions." *Williams v. Nat'l Sch. of Health Tech.,* 836 F. Supp. 273, 282 (E.D. Pa. 1993). "Whether [the defendant] is entitled to any relief [against the University] on his claim is wholly independent of his liability to the government for defaulting on his student loans." *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987). In *Olavarrieta*, the court held that the claim alleging breach of contract or fraud against the university is a separate and independent action from the government's actions against him. *Id.*

In *Durbin*, 64 F.Supp.2d at 637, the court noted that in student loan cases, "what the student got from the lender is money, and its value is unquestionable. . . . The bank lent money, and the government promised the bank that the debt would be paid. Neither the bank nor the government promised satisfaction with schools or educations. Because the choice of institution and curriculum was the student's, the responsibility for a bad choice rests with the student." Here, even if the defendant entered into an agreement with school administrators as he alleges, the facts clearly demonstrate the defendant signed numerous promissory notes and got money from a lending institution. Neither the bank nor the government promised any scholarship or satisfaction of any verbal agreements. Because the choice to attend the university under the alleged circumstances was the defendant's, the responsibility for a bad choice must rest with him. The promissory notes that the defendant signed did not provide that the loans would be assumed by the university. The bank that made the loan, now held by the DOE, was not a party to any enrollment contract, so the failure by the school to perform any alleged contract, written or verbal, would not affect the defendant's obligation to repay the bank money borrowed to attend the school. As an assignee of the lender, the DOE stands in the shoes of the bank,

and the defendant's grievance with the school and its officers gives no defense to repayment of the loan held by the government.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, this court recommends that the plaintiff's motion for summary judgment be granted and the defendant's motion to dismiss be denied. Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.
.

                                                   s/William M. Catoe
                                                   United States Magistrate Judge

January 4, 2008

Greenville, South Carolina